**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

**Raj Mahendrakumar Patel**

v.

Case No. 1:26-cv-694-PB-TSM
Opinion No. 2026 DNH 164

**David Wesling, Acting Director,**
**ICE Boston Field Office, et al.**

## MEMORANDUM AND ORDER

Raj Mahendrakumar Patel, a citizen of India, was arrested and detained shortly after he walked into the United States from Canada. The issue presented by his habeas corpus petition is whether he has a right to a bond hearing before an immigration judge.

## I. BACKGROUND

Patel entered the United States without inspection in the early morning hours of June 6, 2026. Doc. 1 at 7. He was apprehended later that day approximately a mile from the Canadian border after he and two companions triggered a sensor that alerted U.S. Customs and Border Protection ("CBP") agents to their presence. Id. He did not possess a valid entry document. Id.

The Department of Homeland Security ("DHS") initially placed Patel into expedited removal pursuant to 8 U.S.C. § 1225(b)(1) by issuing a Notice and Order of Expedited Removal on the day of his arrest. Doc. 1-1. Upon

receipt of the order, Patel expressed a fear of returning to India based on previous instances of violence against him. Doc. 1 at 6-8. According to Patel, he had been severely beaten on two occasions by members of the Bharatiya Janata Party, the ruling faction in India, because of his affiliation with the Indian National Congress, a rival political party. See id. at 6. Patel was then referred for a credible fear interview with an asylum officer from U.S. Citizenship and Immigration Services ("USCIS") in accordance with § 1225(b)(1)(A)(ii). Id. at 7-8. On August 4, 2026, the asylum officer found that Patel had established a credible fear of persecution in the event of his return to India. Doc. 1-3. Three days later, DHS issued Patel a Notice to Appear commencing full removal proceedings against him under 8 U.S.C. § 1229(a). Doc. 1-4.

Patel has been in DHS detention since his arrest. Doc. 1 at 6-9. On August 27, 2026, he filed a habeas corpus petition arguing that his detention without an individualized bond hearing violates both 8 U.S.C. § 1226(a) and his constitutional right to due process. Id. at 9-16.

## II. STANDARD OF REVIEW

When a person is held "in custody in violation of the Constitution or laws or treaties of the United States," habeas corpus relief is appropriate. 28 U.S.C. § 2241(c)(3). The habeas petitioner carries the burden of proving that his detention is unlawful. Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir.

2009) ("The burden of proof of showing deprivation of rights leading to unlawful detention is on the petitioner."). If a petition "present[s] only issues of law," it may be resolved on the merits without a hearing. See 28 U.S.C. § 2243; see also R. Governing Section 2254 Cases 8(a); LR 7.4(c).

## III. ANALYSIS

Patel presents two arguments for a bond hearing. First, he asserts that he is entitled to a hearing under § 1226(a) because he was placed in full removal proceedings after an asylum officer determined that he faced a credible fear of persecution. In the alternative, he argues that he has a constitutional right to a hearing even if his statutory argument fails to persuade. I turn to Patel's arguments after briefly explaining the expedited removal process.

### A. Expedited Removal Process

Two categories of noncitizens are subject to expedited removal if they are found to be inadmissible for specified reasons.[1] The first consists of

---

[1] A noncitizen can be subjected to expedited removal under § 1225(b)(1)(A)(i) only if they are inadmissible under 8 U.S.C. § 1182(a)(6)(c), because they have attempted to gain admission by misrepresenting a material fact, or § 1182(a)(7), because they lack a valid entry document. 8 U.S.C. § 1225(b)(1)(A)(i). And even if a noncitizen is inadmissible under § 1182(a)(6)(c) or § 1182(a)(7), they still cannot be placed in expedited removal if they are "a native or citizen of a country in the Western Hemisphere with whose government the United States does not have full diplomatic relations" and they arrive "by aircraft at a port of entry." Id. § 1225(b)(1)(F).

noncitizens "arriving in the United States" under § 1225(b)(1)(A)(i), a status defined as "coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1.2. The second is comprised of noncitizens "designated" by the Secretary of Homeland Security who have not been admitted or paroled into the United States and cannot demonstrate that they have been "physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility."[2] 8 U.S.C. § 1225(b)(1)(A)(iii)(I)-(II). This second category can vary significantly in scope because the Secretary has discretion to decide how broadly to enforce the continuous presence requirement. See id.

Prior to January 2025, the Secretary applied the continuous presence category to cover only noncitizens who were apprehended within 100 miles of the border and could not establish continuous presence for the preceding fourteen days. See Designating Aliens for Expedited Removal, 69 Fed. Reg. 48877 (Aug. 11, 2004).[3] Under current policy, in contrast, the continuous

---

2 Although § 1225(b)(1)(A)(iii)(I) gives designation authority to the Attorney General, this power was transferred to the Secretary of Homeland Security. See 6 U.S.C. § 202(3); 8 C.F.R. § 235.3(b)(1)(ii).

3 This policy, first issued in 2004, was replaced by a different policy in 2019 that provided for a similarly expansive designation as that currently in effect. See Designating Aliens for Expedited Removal, 84 Fed. Reg. 35409 (July 23, 2019). However, the 2019 policy was rescinded in 2022 and replaced with the initial 2004 policy, see Rescission of the Notice of July 23, 2019,

presence category has been expanded to cover any inadmissible noncitizen who cannot demonstrate that they have been continuously present in the United States for two years. See Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025).

If a noncitizen subjected to expedited removal expresses either an intention to apply for asylum or a fear of persecution, they must be interviewed by an asylum officer. 8 U.S.C. § 1225(b)(1)(A)(ii). A noncitizen who is found not to have a credible fear after an interview must remain in expedited removal. Id. § 1225(b)(1)(B)(iii)(I). If the noncitizen is found to have a credible fear of persecution, however, they will be moved from expedited removal into a full removal proceeding under § 1229a. Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 110 (2020) (citing 8 C.F.R. § 208.30(f)).

Patel was initially placed in expedited removal pursuant to § 1225(b)(1)(A)(iii) because he lacked a valid entry document and he had not been continuously present in the United States for two years. See Doc. 8 at 3. He was moved into a full removal proceeding after an asylum officer determined that he has a credible fear of persecution. See Doc. 1-4.

---

Designating Aliens for Expedited Removal, 87 Fed. Reg. 16022 (Mar. 21, 2022), which again controlled until the issuance of the most recent policy, see Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025).

## B. Statutory Argument

Patel argues that he became entitled to a bond hearing when he was moved into a full removal proceeding following the asylum officer's credible fear determination. As he sees it, § 1225(b)(1) ceases to apply to a noncitizen who has been moved from expedited removal into full removal. Doc. 6 at 2-7. At that point, he suggests, the noncitizen's continued detention pending the completion of the removal proceeding becomes subject to § 1226(a), which entitles him to a bond hearing. Id. at 7.

The fatal flaw in Patel's argument is that he fails to consider the plain language of § 1225(b)(1)(B)(ii), which provides in pertinent part that "[i]f the officer determines at the time of the interview that an alien has a credible fear of persecution . . . the alien shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). As the Supreme Court recognized in Jennings v. Rodriguez, 583 U.S. 281 (2018), "[t]he plain meaning" of § 1225(b)(1)(B)(ii) is that detention without a bond hearing is required until "immigration officers have finished 'consider[ing]' the application for asylum," id. at 299 (quoting 8 U.S.C. § 1225(b)(1)(B)(ii)) (alteration in original). Given the plain language of § 1225(b)(1)(B)(ii), Patel must be detained until his application for asylum is resolved unless his continued detention is unconstitutional.

Patel's invocation of a now-overruled Board of Immigration Appeals ("BIA") precedent does not disturb this analysis. In Matter of X-K-, 23 I. & N. Dec. 731 (BIA 2005), the BIA held that noncitizens in expedited removal under § 1225(b)(1)(A)(iii) who are transferred from expedited to full removal proceedings after a credible fear determination are entitled to a bond hearing. But once the Supreme Court rejected that interpretation of § 1225(b)(1) in Jennings, the Attorney General, acting in his capacity to certify and review questions decided by the BIA, see 8 U.S.C. § 1103(g)(2), overruled Matter of X-K-. In Matter of M-S-, 27 I. & N. Dec. 509 (A.G. 2019), the Attorney General held that detention is statutorily required until the resolution of removal proceedings. While Patel is right to note that I must assess the statutory arguments myself rather than deferring only to current executive agency interpretation, see Doc. 6 at 4 (citing Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024)), I have based my interpretation of § 1225(b)(1)(B)(ii) on the statute's plain language and the Supreme Court's decision construing the provision in Jennings, without giving any deference to the past or present agency interpretations. Accordingly, his reliance on an overruled BIA precedent is misplaced.

Patel's appeal to Jimenez v. FCI Berlin, Warden, 799 F.Supp.3d 59 (D.N.H. 2025), is also unavailing. In that case, my colleague considered a habeas petition from a noncitizen who, like Patel, had been detained upon

entry into the United States and placed in expedited removal proceedings before expressing a fear of persecution. Id. at 63. While an asylum officer initially made a negative credible fear determination in that case, an immigration judge subsequently reversed the determination and vacated the expedited removal proceedings. Id. DHS then instituted full § 1229a removal proceedings against Jimenez before deciding to release him pursuant to an Order of Release on Recognizance in accordance with § 1226(a). Id. Two years later, DHS issued a warrant for Jimenez's arrest pursuant to § 1226(a) and re-detained Jimenez, who then filed a habeas petition. Id. at 64. While my colleague granted Jimenez's petition, key factual differences undermine Patel's reliance on that case. Crucially, unlike Patel, Jimenez had been released from detention and then re-detained expressly in accordance with § 1226(a), thus rendering the government's argument that he was properly detained under § 1225(b)(1) implausible. Because Patel has not left DHS custody and the government has not asserted at any point that he is being held under § 1226(a), Jimenez does not apply.

## C. Constitutional Argument

The Supreme Court has long recognized that the Due Process Clause of the Fifth Amendment requires that "even aliens shall not be . . . deprived of life, liberty, or property without due process of law." Wong Wing v. United States, 163 U.S. 228, 238 (1896). Over the span of many decades and in

various contexts, the Court has reiterated this basic principle. See, e.g., Yamataya v. Fisher, 189 U.S. 86, 101 (1903) (declaring in the case of a noncitizen found inadmissible due to likelihood of becoming a public charge that "it is not competent for [executive officers] . . . arbitrarily to cause an alien who has entered the country . . . to be taken into custody and deported without giving him all opportunity to be heard"); Galvan v. Press, 347 U.S. 522, 530 (1954) (stating in the context of a challenge brought by a noncitizen deemed deportable for membership in the Communist Party that "since he is a 'person,' an alien has the same protection for his life, liberty and property under the Due Process Clause as is afforded to a citizen"); Mathews v. Diaz, 426 U.S. 67, 77 (1976) (asserting in a decision involving a constitutional challenge to the exclusion of certain noncitizens from the Medicare program that the Fifth Amendment protects every one of the "literally millions of aliens within the jurisdiction of the United States" from "deprivation of life, liberty, or property without due process of law").

Generally, the only constraint on the acquisition of due process rights by noncitizens is one of physical location. While constitutional due process protections are "unavailable to aliens outside of our geographic borders[,] . . . once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including

aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).

This geographic rule, however, is not absolute. Under the "entry fiction" doctrine, a noncitizen who has not "effected an entry" into the United States does not possess constitutional due process rights merely through physical presence within the territorial boundaries of the country. See id.; Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 215 (1953). For most of its history, the entry fiction doctrine applied only to noncitizens arriving at ports of entry. See Padilla v. U.S. Immigr. & Customs Enf't, 192 F.4th 894, 910-11 (9th Cir. 2026) (providing a detailed analysis of the historical background and development of the entry fiction doctrine). According to the doctrine, such persons, notwithstanding their physical presence in the United States, remain "on the threshold of initial entry" and are treated for constitutional due process purposes "as if stopped at the border." Mezei, 345 U.S. at 212, 215. Then, in Department of Homeland Security v. Thuraissigiam, the Court extended the entry fiction doctrine to apply to noncitizens who avoid ports of entry when entering the United States but are "detained shortly after unlawful entry." 591 U.S. at 140. These noncitizens "cannot be said to have 'effected an entry'" and therefore "cannot claim any greater rights under the Due Process Clause." Id. at 107, 140 (quoting Zadvydas, 533 U.S. at 693).

The circumstances of Patel's entry and apprehension fall squarely within those addressed by Thuraissigiam. In Thuraissigiam, the Court rejected the argument that a noncitizen apprehended by CBP agents within twenty-five yards of crossing the Mexican border had a constitutional due process right to reapply for asylum. Id. at 114-15. While Patel was stopped farther from the border (approximately one mile versus twenty-five yards) and perhaps somewhat later in time after crossing (it is unclear exactly how many minutes or hours passed between Patel's crossing and apprehension), these differences cannot meaningfully distinguish Patel's case from Thuraissigiam. Patel, who triggered sensors alerting CBP agents to his presence as soon as he crossed the border, had not yet "effected an entry" when he was apprehended that same morning. Thus, like Thuraissigiam, Patel does not possess constitutional due process rights merely by dint of his brief physical presence in the country before apprehension.

Patel's attempt to distinguish Thuraissigiam is unpersuasive. According to Patel, the Thuraissigiam Court's seemingly broad language that noncitizens stopped "at the threshold of initial entry cannot claim any greater rights under the Due Process Clause . . . [and] therefore [have] no entitlement to procedural rights other than those afforded by statute," id. at 107, is cabined by the Court's later statement that the respondent's rights were limited to "those rights regarding admission that Congress has provided by

statute," id. at 140 (emphasis added). See Doc. 9 at 3-4. By this account, noncitizens apprehended at the threshold of entry do not possess constitutional due process rights when they seek to challenge administrative decisions regarding their lawful admission into the United States, as Thuraissigiam did, but do possess due process rights when challenging the lawfulness of their detention, as Patel does here.

Such a subtle parsing of the language of Thuraissigiam is unconvincing. One use of a phrase that can possibly be read to limit the applicability of the holding is not enough to counterbalance the broader language in Thuraissigiam suggesting that those on the threshold of entry do not derive any constitutional due process rights merely from their physical presence in the United States. Moreover, the idea that a noncitizen's possession of constitutional due process rights hinges on the type of claim brought is a dubious proposition, and Patel does not provide a principled argument supporting his proposed limitation of Thuraissigiam to its facts.

My colleague's decisions in Destino v. FCI Berlin, Warden, 2025 DNH 149, 2025 WL 4010424 (D.N.H. Dec. 24, 2025), and K-S- v. Warden, FCI Berlin, 2025 DNH 145, 2025 WL 3671774 (D.N.H. Dec. 17, 2025), are not inconsistent with this reasoning. While both decisions ordered constitutionally required bond hearings for noncitizens detained pursuant to

§ 1225(b)(1), neither case presented factual circumstances sufficiently similar to Patel's to cast doubt on the applicability of Thuraissigiam here.

Destino involved a habeas petition from a noncitizen who had been rearrested and detained by DHS more than two years after DHS had granted him parole. 2025 WL 4010424, at *1-2. Without reaching the statutory question of the lawfulness of mandatory detention under § 1225(b)(1), my colleague found that the petitioner, who had been living "within the United States for nearly three years and was well within our country's borders when" DHS arrested him, was entitled to a bond hearing under the Due Process Clause. Id. at *3-9, *14. Though my colleague did endorse the narrow reading of Thuraissigiam now presented by Patel, id. at *4-6, her conclusion also rested on the principle that noncitizens paroled into the United States can, over time, gain an "accrued liberty interest conferring due process protections," id. Destino therefore should not be read to deny Thuraissigiam's effect where a petitioner has not accrued due process rights through a sufficiently lengthy period of living freely in the United States before detention.

K-S-, meanwhile, concerned a petitioner who had traveled as a stowaway in a container ship bound for the United States before being discovered by the ship's crew and handed over to federal authorities upon docking in Rhode Island. 2025 WL 3671774, at *1. The petitioner, who was

immediately detained under § 1225(b)(1), was granted asylum by an immigration judge, but the government appealed that decision to the BIA. Id. The appeal was not expeditiously resolved, and the petitioner then filed a habeas petition requesting a bond hearing. Id. By the time my colleague ordered the government to provide him a bond hearing, the petitioner had been in custody for sixteen months. Id. at *2, *5. Patel now argues that because the petitioner in K-S- was apprehended on the threshold of entry but still able to contest his detention without a bond hearing on constitutional due process grounds, he should be able to do the same. Doc. 9 at 5-6. However, K-S- is distinguishable in that the decision was based on the "unreasonably prolonged" duration of the detention. 2025 WL 3671774, at *5. The ruling thus does not contradict the logic in Thuraissigiam that noncitizens apprehended at the threshold of entry do not derive constitutional due process rights from mere physical presence in the United States.

Because Patel did not cross the threshold of entry for the purposes of a constitutional due process analysis, his entitlement to a bond hearing depends upon the rights—or absence thereof—granted by statute. In reaching this conclusion, I do not express any view as to whether the Due Process Clause would provide a right to a bond hearing for a noncitizen detained under § 1225(b)(1) who has either been in the United States for a

meaningfully longer period of time than Patel before apprehension or been held for a sufficiently extended period of time to render the detention unreasonably prolonged.

## IV. CONCLUSION

For the reasons stated above, Patel's petition for a writ of habeas corpus is denied.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

November 18, 2026

cc: Counsel of Record